## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | Case No. 17-05829-dd |
| Amanda Celeste Del Zotto, | Chapter 7 |
| Debtor. | ORDER ON MOTION TO DISMISS WITH PREJUDICE |

This matter is before the Court on a motion to dismiss case with prejudice filed by Universal Physician Services, LLC ("UPS") on February 20, 2018.  The debtor, Amanda Celeste Del Zotto, did not file a written objection to UPS's motion.  However, a hearing was held on the motion on April 5, 2018, and Ms. Del Zotto appeared, with counsel, at the hearing and contested the motion.  Both parties submitted closing briefs after the hearing.  The Court now issues this Order.

### FINDINGS OF FACT

1.  The parties agree that UPS places physicians in emergency rooms that are in need of temporary physician services.  Ms. Mary Ludvig, the debtor's mother, is the president of UPS. UPS asserts it maintains a significant amount of confidential information regarding customers and physicians and that the protection of this information is paramount to its success.

2.  UPS is a family business.  Ms. Del Zotto was formerly employed by UPS.  Her responsibilities included recruiting and credentialing physicians and assisting hospitals with paperwork.   Ms. Del Zotto was terminated from UPS in 2015. UPS believed that Ms. Del Zotto was using UPS's confidential information for her personal financial benefit.

3.  After Ms. Del Zotto's termination from UPS, an email was sent on February 13, 2015 to a list of undisclosed recipients, stating that she was no longer with UPS and had "since created a new organization completely autonomous from the staff at UPS." The email is signed:

Amanda Del Zotto

Direct Line: 727-510-1138

www.clinicalservicesinc.com

amanda@clinicalservicesinc.com

4. UPS filed an action in Florida state court against Ms. Del Zotto in 2015, seeking an injunction preventing Ms. Del Zotto from using any of UPS's confidential information and damages resulting from Ms. Del Zotto's use of that information (the "Florida Litigation"). A trial was held on April 1, 2016. Although she did have counsel during portions of the Florida Litigation, Ms. Del Zotto was not represented by counsel during the trial, but, according to the Florida state court, appeared and participated in the proceedings.

5. On April 26, 2016, the Florida state court entered a permanent injunction against Ms. Del Zotto, prohibiting her from "utilizing, sharing, disclosing, or otherwise using UPS's confidential and trade secret information, specifically its customer information including: contact information, personal information, pricing information, information pertaining to hospital emergency department contracts (such as when those contracts are coming up for renewal), hospital lists containing hospital CEOs, emergency department contract holders and renewal dates, volumes, bids and counties served, credentialing information, provider lists, personal and health information on physicians, as well as proposals and contracts." The order states, "UPS has established a clear legal right to injunctive relief based upon Del Zotto's misappropriation of UPS's confidential and trade secret information. . . . Del Zotto's misappropriation was willful, malicious, and deliberately caused injury to UPS."

6. The Florida state court also entered a judgment for damages against Ms. Del Zotto on April 26, 2016. The judgment states, in part, "The Court further finds that Del Zotto's actions

towards UPS were wrongful, without just cause, and deliberately committed with the intent to cause UPS injury. Del Zotto's conduct constitutes willful and malicious misappropriation." The Florida state court awarded UPS a judgment in the amount of $512,871.00.

7. After the judgment was obtained, UPS undertook efforts to collect from Ms. Del Zotto; beginning in August 2016, including hiring a private investigator, domesticating the judgment in South Carolina, and attempting to get a receiver appointed in South Carolina. An order appointing a receiver was signed by the state court judge on November 14, 2017.

8. UPS also garnished approximately $54,000.00 from a retirement account in Ms. Del Zotto's name to satisfy a portion of the judgment. The retirement account was created and funded by UPS, and Ms. Del Zotto testified that she was unaware of its creation and existence for a period of time. Upon discovering the retirement account, Ms. Del Zotto immediately attempted to transfer the funds to another savings account, but before the transfer could be completed, the garnishment by UPS occurred.

9. Ms. Del Zotto filed her chapter 7 bankruptcy case on November 17, 2017, three days after a receiver was appointed.

10. Ms. Del Zotto filed her original schedules with her petition on November 17, 2017. Those schedules listed no assets other than a 16 percent interest in an entity called Tridel Motors and no income or expenses. The only creditors listed in the original schedules were American Express, Chase Credit Card, and UPS. Ms. Del Zotto filed amended schedules on January 19, 2018. The amended schedules indicated that Ms. Del Zotto has an interest in vehicles, but states, "unaware of total property and amount of vehicles." The amended schedules also list a coffee machine, "silver coins = monex (under mothers possession)," clothing and handbags, diamond earrings (also listed as in her mother's possession), interests in Tridel Motors, UPS, and Tridel Consulting, an IRA with Wells Fargo, and a South Carolina federal lawsuit against UPS as assets.

The amended schedules list no creditors and no income and no expenses, other than for taxes owed to the State of North Carolina.

11. Ms. Del Zotto's only creditors are UPS, the State of North Carolina, and a few credit card companies. Her total credit card debt is approximately $45,000.00. Ms. Del Zotto testified that this credit card debt was primarily incurred in connection with the Florida Litigation for fees for attorneys, travel, and other related expenses.

12. Eric DeLong, Ms. Del Zotto's boyfriend, testified that he and his father are the owners of Clinical Services, Inc. ("Clinical Services"), a business that performs the same services as UPS. Mr. DeLong testified that he owns ten percent and his father owns 90 percent. Both Mr. DeLong and Ms. Del Zotto testified that Ms. Del Zotto has never had an ownership interest in Clinical Services, and in the two years prior to November 2017, was not an employee of and was not paid by Clinical Services.

13. Ms. Del Zotto received health insurance benefits through Clinical Services for six months in 2016. Mr. DeLong testified that she was not an employee at the time, but that she needed health insurance, so he listed her as an employee of Clinical Services in order to obtain coverage for her.

14. Mr. DeLong testified that Ms. Del Zotto currently resides with him and has been residing with him full-time since November 2017, but has no ownership interest in the home in which they reside. He testified that he supports Ms. Del Zotto financially and that she maintains his household, helps take care of his children, and drives him to doctors' appointments.

15. Mr. DeLong testified that Ms. Del Zotto received two checks for web design services as income, but he could not recall the dates of those checks. Both Mr. DeLong and Ms. Del Zotto testified that Ms. Del Zotto currently does not earn any income.

16.     Ms. Ludvig testified that Ms. Del Zotto has never made any attempts to pay the judgment. Ms. Del Zotto testified that the purpose of her bankruptcy filing was to attempt to discharge UPS's judgment.

## ARGUMENTS OF THE PARTIES

UPS argues that Ms. Del Zotto's chapter 7 case should be dismissed with prejudice pursuant to 11 U.S.C. § 707(a), for cause, because Ms. Del Zotto's case was filed in bad faith. UPS argues that Ms. Del Zotto's bad faith is evident in that she has admitted the main purpose of her bankruptcy case was to stop collection attempts on and discharge UPS's judgment, and therefore this is essentially a two-party dispute; she has misrepresented her assets and income in her schedules; and she is living a comfortable lifestyle while refusing to repay her creditors. UPS also argues that the Florida state court judgment is entitled to collateral estoppel effect, and because the Florida state court has already found that the judgment arose from willful and malicious actions by Ms. Del Zotto, the judgment would be found non-dischargeable if an adversary proceeding under 11 U.S.C. § 523(a)(6) is ultimately filed.

Ms. Del Zotto responds first by providing explanations for those assets UPS asserts were omitted from her schedules, including an interest in a 1966 Ford Mustang and some jewelry. Ms. Del Zotto also responds that the evidence and testimony established that she never had an ownership interest in Clinical Services and was not employed by or paid by the company. Finally, Ms. Del Zotto argues that UPS is not entitled to file a motion to dismiss her case because 11 U.S.C. § 707(b) only provides for dismissal of a case of an individual debtor whose debts are primarily consumer debts, and Ms. Del Zotto's debts are primarily business debts.

5

## CONCLUSIONS OF LAW

Ms. Del Zotto is correct that section 707(b) provides only for dismissal of a chapter 7 case of an individual debtor whose debts are primarily consumer debts. However, UPS is seeking dismissal under section 707(a), for cause, not under section 707(b).

11 U.S.C. § 707(a) provides:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –
> (1) Unreasonable delay by the debtor that is prejudicial to creditors;
> (2) Nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) Failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

"Bad faith is not expressly included in section 707(a)'s list of situations which constitute cause for dismissal. However, courts have often held that lack of good faith in filing a bankruptcy petition is cause for purposes of section 707(a)." *In re Lloyd*, 458 B.R. 295, 298 (Bankr. D.S.C. 2011) (citing *In re Dudley,* 405 B.R. 790, 800 (Bankr. W.D. Va. 2009); *In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008); *In re Zick*, 931 F.2d 1124, 1126-27 (6th Cir. 1991)). Whether to dismiss the case for cause under section 707(a) is within the Court's discretion, and in making such a decision, the Court should consider the totality of the circumstances. *Lloyd*, 458 B.R. at 298 (citations omitted). Factors courts have considered in determining whether a petition was filed in good faith include:

1. The debtor reduces creditors to a single creditor in the months prior to the filing of the petition;
2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
3. [The d]ebtor filed the case in response to a Judgment pending litigation . . . . ;
4. The debtor made no efforts to repay his debts;
5. The unfairness of the use of Chapter 7;
6. The debtor has sufficient resources to pay his debts;
7. The debtor is paying debts to insiders;
8. The schedules inflate expenses to disguise financial well-being;

9. The debtor transferred assets;
10. The debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors;
11. The debtor employed a deliberate and persistent plan of evading a single major creditor;
12. The debtor failed to make candid and full disclosure;
13. The debts are modest in relation to assets and income; and
14. There are multiple bankruptcies or other procedural "gymnastics."

*In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008) (citing *In re O'Brien*, 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005)). *See also McDow v. Smith*, 295 B.R. 69, 79 n.22 (E.D. Va. 2003) (citing eleven factors courts consider when determining a debtor's good faith).

Here, the totality of the circumstances warrant dismissal for cause. Other than UPS's judgment, Ms. Del Zotto's only other creditors are credit card companies, and Ms. Del Zotto testified that much of her credit card debt was incurred defending the Florida Litigation (paying for attorneys, traveling back and forth to Florida, etc.). Ms. Del Zotto did not list any income on her schedules; however, testimony established that she received some payment for web design services and that her living expenses are covered by her boyfriend. Additionally, there is at least some evidence indicating that Ms. Del Zotto worked for or had some connection with Clinical Services and as a result received benefits from Clinical Services. Ms. Del Zotto has made no attempts to repay UPS's judgment and in fact has made efforts to avoid paying UPS. Testimony established that UPS experienced significant difficulties serving Ms. Del Zotto post-judgment, and Ms. Del Zotto testified that after she discovered the existence of the retirement account, she attempted to transfer the funds to another savings account but was not able to do so before the funds were garnished by UPS. Several of the factors typically used by courts to determine good faith in connection with dismissal of a chapter 7 case are met here, and the totality of the circumstances suggests that the case should be dismissed.

Additionally, and importantly, UPS's judgment, the avoidance of which Ms. Del Zotto testified was her main purpose in filing her bankruptcy case would be nondischargeable in an

adversary proceeding. Section 523(a)(6) provides that a chapter 7 discharge does not discharge the debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." "For purposes of section 523(a)(6), '"willful" requires deliberate or intentional acts, while "malicious" refers to acts that are "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." Furthermore, "it is the debtor's subjective state of mind that is relevant," and malice can be found implicitly through the "acts and conduct of the debtor in the context of [the] surrounding circumstances."'" *Twin City Fire Ins. Co. v. Estrin (In re Estrin)*, 2016 WL 691506, at *15 (Bankr. D.S.C. Feb. 19, 2016) (internal citations omitted). *See generally Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

The Fourth Circuit, as well as some lower courts within the Fourth Circuit, have found that a state court finding of willful and malicious injury is entitled to collateral estoppel effect in a bankruptcy case, precluding discharge of the debt. *See Combs v. Richardson*, 838 F.2d 112 (4th Cir. 1988) (finding that state court jury verdict concluding that the defendant acted willfully and maliciously was entitled to collateral estoppel effect in nondischargeability proceeding, and therefore debt was nondischargeable under section 523(a)(6)); *LeCann v. Cobham (In re Cobham)*, 669 Fed. App. 171 (4th Cir. Oct. 14, 2016) (affirming bankruptcy court determination that "state court judgment was entitled to collateral estoppel effect and that the judgment is nondischargeable because it resulted from Cobham's 'willful and malicious injury,' within the meaning of § 523(a)(6)"); *Stroud v. Read (In re Read)*, 1999 WL 33485632 (Bankr. D.S.C. June 30, 1999) (finding that Tennessee state court orders, one of which made specific findings of willfulness and maliciousness, were entitled to collateral estoppel effect and therefore the debt owed by the debtor to her ex-husband was non-dischargeable under section 523(a)(6)); *Erie Ins. Group v. Chaires (In re Chaires)*, 249 B.R. 101 (Bankr. D. Md. 2000) (finding that sanctions awarded under Maryland law in state court action were entitled to collateral estoppel effect and nondischargeable under

8

section 523(a)(6)). To determine whether collateral estoppel applies, the Court must apply the law of the state in which the judgment was entered. *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997). Thus, in this case, Florida law regarding collateral estoppel must be examined.

Florida law states that collateral estoppel applies when:

(1) The identical issues were presented in a prior proceeding;
(2) There was a full and fair opportunity to litigate the issues in the prior proceeding;
(3) The issues in the prior litigation were a critical and necessary part of the prior determination;
(4) The parties in the two proceedings were identical; and
(5) The issues were actually litigated in the prior proceeding.

*Pearce v. Sandler*, 219 So.3d 961, 965 (D.C.A. Fla. 3d Dist. 2017) (quoting *Topps v. State*, 865 So.2d 1253, 1255 (Fla. 2004)). In this case, all of these factors are met. The Florida Litigation, which involved the same parties involved here, decided the question of whether Ms. Del Zotto had used UPS's confidential business information for her own benefit. The state court in the Florida Litigation found that Ms. Del Zotto misappropriated UPS's confidential and trade secret information and that her misappropriation was "willful, malicious, and deliberately caused injury to UPS." Ms. Del Zotto participated in the Florida Litigation, including being present at and participating in the trial. Accordingly, the issue of whether Ms. Del Zotto caused willful and malicious injury to UPS has already been decided by the state court. The state court's findings are entitled to collateral estoppel effect, and UPS's judgment would be found nondischargeable pursuant to section 523(a)(6) in an adversary proceeding.

UPS requests dismissal with prejudice for a period of five years. UPS indicates that if dismissal is not granted, it intends to file an adversary proceeding to establish UPS's judgment as nondischargeable. An adversary proceeding is not currently before the Court. However, all of the findings from the Florida Litigation were established. The Court looks to section 349 for a remedy in connection with dismissal, in lieu of dismissal with prejudice as to refiling another bankruptcy

9

case, as requested by UPS. Section 349(a) provides, in relevant part, "Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed." "The court may order otherwise and dismiss the case with prejudice and hold that some or all of the debts listed in the case being dismissed are not dischargeable." *In re Shields*, 524 B.R. 769, 771 (Bankr. E.D. Tenn. 2015) (citing *In re Jones*, 289 B.R. 436, 440 (Bankr. M.D. Ala. 2003)). Here, cause exists to order otherwise and find that UPS's judgment should not be discharged in any future bankruptcy case filed by Ms. Del Zotto.

## CONCLUSION

For the reasons set forth above, UPS's motion to dismiss is granted. The dismissal is without prejudice as to any future filings by Ms. Del Zotto; however, in any such future proceeding, UPS's judgment is nondischargeable under sections 523(a)(6) and 349.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**05/02/2018**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 05/03/2018